**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SAMANTHA WERKHEISER,** *formerly known as*
*Samantha Stone*,

                                        **Plaintiff,**

    **vs.**                                                              **3:22-CV-73**
                                                                        **(MAD/TWD)**

**COUNTY OF BROOME, VERONICA GORMAN,**
**THOMAS JACKSON, CITY OF BINGHAMTON,**
**CARL PETERS, CHARLES WOODY, and APRIL**
**DEMER,**

                                        **Defendants.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**HALE & MONICO LLC**                          **ARTHUR LARKIN, ESQ.**
250 Park Avenue – 7th Floor
New York, New York 10177
Attorneys for Plaintiff

**BROOME COUNTY ATTORNEY'S OFFICE**   **ROBERT G. BEHNKE, ESQ.**
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, New York 13902-1766
Attorneys for Defendants County of Broome,
Veronica Gorman, and Thomas Jackson

**CITY OF BINGAMTON CORPORATION**      **BRIAN M. SEACHRIST, ESQ.**
**COUNSEL**
38 Hawley Street
City Hall
Binghamton, New York 13901
Attorneys for Defendant City of Binghamton

**COUGLIN, GERHART LAW FIRM –**          **ALAN J. POPE, ESQ.**
**BINGAMTON OFFICE**                          **CAROLINE LAUREN MYRDEK, ESQ.**
99 Corporate Drive
P.O. Box 2039
Binghamton, New York 13902

Attorneys for Defendants Carl Peters,
Charles Woody, and April Demer

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

Plaintiff Samantha Werkheiser ("Plaintiff") filed this action under 42 U.S.C. § 1983

("Section 1983") on January 26, 2022, against Defendants County of Broome, Veronica Gorman,

and Thomas Jackson ("County Defendants"), and City of Binghamton, April Demer, Carl Peters,

Charles Woody ("City Defendants"), and ten John Doe law enforcement officials for the City or

the County.[1]  *See* Dkt. No. 1 at ¶¶ 6-14.  Plaintiff alleges she was wrongfully prosecuted for two

counts of predatory sexual assault against a child.  *See id.* at ¶ 1.  Specifically, Plaintiff alleges

claims under Section 1983 for malicious prosecution, denial of the right to a fair trial, failure to

intervene, and *Monell* liability.

Currently before the Court are two motions to dismiss from Defendants.  *See* Dkt. Nos. 24,

25.  Plaintiff opposes both motions.  *See* Dkt Nos. 33, 39.  For the reasons set forth below, County

Defendants' motion to dismiss is granted in part and denied in part, and City Defendants' motion

to dismiss is denied.

### II. BACKGROUND

In 2011, Plaintiff's two daughters accused Plaintiff of abuse.[2]  *See* Dkt. No. 1 at ¶ 17.  At

the time, the two daughters lived with their father—Plaintiff's ex-husband—following a custody

battle between Plaintiff and said ex-husband.  *See id.* at ¶ 24.

---

[1] Plaintiff has not amended her pleadings to name the John Doe Defendants.
[2] As referred to in the criminal trial records, "CW-1" is the older daughter and "CW-2" is the
younger daughter.

Plaintiff's daughters were interviewed by Defendants Peters, Demer, and Woody, all of whom were employed as investigators and/or police officers with the Binghamton Police Department. *See id.* at ¶ 46. Broadly stated, Plaintiff alleges that those investigatory interviews departed from accepted practices by

> failing to do a practice interview about a neutral topic that would demonstrate the ground rules; repeatedly asking CW-1 leading, suggestive questions; failing to ask appropriate follow-up questions to find out facts about specific instances of purported "abuse"; allowing CW-1 to claim "abuse" in general terms, describing what she claimed "would" happen when Samantha supposedly abused her rather than describing specific instances of abuse; reinforcing CW-1's claims with lengthy commentary that accepted her claims without questioning them; and failing to ask open-ended questions and letting CW-1 answer them … .

*Id.* at ¶¶ 32-50.

With respect to Defendant Peters, Plaintiff specifically claims that he "did not ask appropriate, non-suggestive questions to follow up on the foregoing matters," and "violated accepted practices by asking CW-2 leading and suggestive questions, and telling her that 'these are things that shouldn't have happened to you,' and that 'none of this is your fault at all,' even before CW-2 had articulated any purported claims of abuse." *Id.* at ¶ 35. Moreover, "[c]ontrary to accepted practices, Defendant Peters failed to consider alternative explanations for the girls' claims of abuse[ ] and overlooked multiple 'red flags' that strongly suggested that CW-1's claims were false," *Id.* at ¶ 33, including allowing the daughters to bring in written lists of claims to the interview. *See id.* at ¶¶ 34, 42. Finally, "Defendant Peters also suggested that it was difficult to talk to a male officer about the alleged abuse," *id.* at ¶ 40, and that Defendant Peters "also read aloud from CW-2's written list and then asked leading, suggestive questions based on the list." *Id.* at ¶ 42. Defendant Woody observed Defendant Peters' interviews of both CW-1 and CW-2. *See*

*id.* at ¶ 53.  As to Defendant Demer, Plaintiff claims that she "had no training whatsoever

regarding child sex abuse investigations," *id.* at ¶ 47, and made errors including

> failing to do a practice interview about a neutral topic that would
> demonstrate the ground rules; by asking leading, suggestive
> questions that were intended to prompt CW-2 to accuse Samantha
> of wrongdoing; by reinforcing CW-2's claims by nodding and
> telling her that 'it's not your fault,' that she should 'be strong and get
> it out' and that she 'did a good job' during the interview; and by
> failing to ask any follow-up questions about specific incidents of
> purported abuse … .

*Id.* at ¶ 48.  The children's stepmother was present for part of CW-2's interview.  *See id.* at ¶ 50.

Five days later, Defendant Peters interviewed Plaintiff's wife Julie Werkheiser, who

denied abusing the children and claimed these were false allegations encouraged by Plaintiff's ex-

husband.  *See id.* at ¶ 51.  Defendant Peters then signed two felony complaints against Plaintiff,

charging her with criminal sexual abuse in the first degree.  *See id.* at ¶ 52.  Defendant Woody

filed the charges.  *See id.* at ¶ 54.  Plaintiff claims that these charges "were based solely on the

flawed, suggestive interviews with CW-1 and CW-2 and the interview with Julie."  *Id.* at ¶ 55.

Plaintiff also alleges that under "accepted practices" the "flawed" interviews should have resulted

in further investigations, not a criminal charge.  *Id.* at ¶¶ 53, 56.  Ultimately, Plaintiff claims

Defendants "Peters, Woody[,] and Demer knew or should have known that CW-1's and CW-2's

allegations of abuse were likely false, or at a minimum, that the allegations were full of red flags

that warranted further investigation."  *Id.* at ¶ 57.

Next, "on August 29, 2011, [Plaintiff] was arrested and arraigned on the felony

complaints, and pleaded not guilty."  *Id.* at ¶ 60.  Plaintiff alleges that the Broome County District

Attorney assigned to the case, Defendant Gorman, failed to investigate or substantiate the

daughters' allegations and conducted improper interviews with the girls, including by failing to

videotape or audio-record the interviews. *See id.* at ¶¶ 61-75. "Between August 2011, and February 2012, a period of approximately six months, [Defendant] Gorman and John Does ##1-10 met with CW-1 and CW-2 multiple times." *Id.* at ¶ 62. Plaintiff alleges "Gorman instructed CW-1 to prepare a written list of her claims of abuse and during Gorman's grand jury presentation, she marked the list as an exhibit and asked CW-1 to read from it," which was "contrary to accepted practices." *Id.* at ¶¶ 67-70. Plaintiff alleges Defendant Gorman "knew or should have known" that such "elicited testimony" from Plaintiff's daughters was "false." *Id.* at ¶ 76. Plaintiff further alleges "Gorman did not conduct further investigation, such as seeking their medical records from pediatricians, in order to see if any corroborating evidence existed," which is "contrary to accepted practices." *Id.* at ¶¶ 74-75. The grand jury then indicted Plaintiff, charging her with two counts of predatory sexual assault against a child based on alleged actions between 2003 and November 2007, even though that section of the Penal Law was only enacted in June 2006. *See id.* at ¶¶ 78-80. Plaintiff alleges "no evidence whatsoever corroborated the girls' claims," *id.* at ¶ 87, and that "[Defendant] Gorman's failure to take the foregoing steps, and intentional failure to direct others to do so, was unreasonable and contrary to accepted practices in the field of child sexual abuse investigations and prosecutions." *Id.* at ¶ 93. Ultimately, Plaintiff alleges Defendant Gorman "overzealously sought and obtained an indictment based on conduct that occurred prior to enactment of the relevant statute." *Id.* at ¶ 3.

On May 8, 2013, a jury found Plaintiff guilty of one count of criminal sexual abuse in the first degree of CW-1, and not guilty on the other count of criminal sexual abuse of CW-2. *See id.* at ¶ 101. Plaintiff was sentenced to twelve years to life in prison. *See id.* at ¶ 102. On November 12, 2015, the Third Department reversed Plaintiff's conviction and remanded the matter for a new trial. *See People v. Stone*, 133 A.D.3d 982, 985 (3d Dep't 2015). The Appellate Division

explained that a new trial was needed for count one because of "erroneous admission of bolstering hearsay" and that a "defect in the indictment [] appears to be a factual, nonjurisdictional one ... that can and should be resolved before a second trial." *Stone*, 133 A.D.3d at 985.

On remand, the trial court appointed Defendant Jackson as special prosecutor to re-try Plaintiff. *See* Dkt. No. 1 at ¶ 110. Defendant Jackson elected not to re-present the case to a new grand jury and the trial court determined that the original grand jury found sufficient evidence to charge Plaintiff with a lesser included offense of sexual conduct against a child in the first degree. *See id.* at ¶¶ 111-13. Defendant Jackson did not file an indictment reflecting the lesser included offense. *See id.* at ¶ 113. Additionally, Plaintiff alleges that Defendant Jackson failed to investigate or substantiate any of the daughters' claims. *See id.* at ¶ 115. Further, Plaintiff claims that Defendant Jackson "had little or no experience handling child sex abuse cases, … had received little or no training in this area[, and] did not conduct an appropriate investigation of the charges or the evidence against Samantha, contrary to accepted practices." *Id.* Following a bench trial, the court found Plaintiff guilty of the lesser included offense and sentenced her to fifteen years in prison. *See id.* at ¶¶ 122-23. On February 21, 2019, the Third Department reversed the second conviction and dismissed the indictment for the failure to "file[] a reduced indictment charging [the] offense," a jurisdictional defect. *People v. Stone*, 169 A.D.3d 1165, 1166 (3d Dep't 2019). Plaintiff claims that "[b]ecause relevant statutes did not allow the defendant prosecutors to try [Plaintiff] … both [D]efendants acted without jurisdiction and are not entitled to prosecutorial immunity." Dkt. No. 1 at ¶ 3.

Since Plaintiff's release, Plaintiff claims one of her daughters has admitted to her and five other witnesses that the two daughters had made up the claims of abuse. *See id.* at ¶¶ 126-30. Over the course of the complaint, Plaintiff repeatedly claims her daughters falsely reported

allegations of abuse. *See, e.g., id.* at ¶ 67 (alleging "CW-1 reported falsely that her mother allegedly abused children …").

County Defendants now argue that (1) the claims against Defendants Gorman and Jackson must be dismissed based on absolute immunity; (2) the *Monell* claim against Broome County must be dismissed as Defendant Jackson is not a policymaker for the County under state law; (3) official capacity claims against Defendant Jackson must be dismissed as they are barred by the Eleventh Amendment; (4) the *Monell* claim against Broome County for failure to train its prosecutors must be dismissed as the complaint did not sufficiently allege a pattern of constitutional violations by the district attorney's office and because Defendant Jackson is not an employee of the County; and (5) the failure to intervene claim against Defendant Gorman must be dismissed because of the statute of limitations and absolute immunity.

City Defendants argue that (1) the malicious prosecution and fair trial claims must be dismissed against the City Defendants to the extent that they are based on mere negligence; (2) the malicious prosecution claim against the City Defendants must be dismissed as there was probable cause for the prosecution; (3) the malicious prosecution claim against the City Defendants must be dismissed as the City Defendants did not initiate and continue the legal proceedings; (4) the denial of a fair trial claim must be dismissed as it was not pled with sufficient specificity; (5) the failure to intervene claim must be dismissed as untimely; and (6) the *Monell* claim against Defendant City of Binghamton must be dismissed as Plaintiff failed to allege an underlying constitutional claim and for a failure to allege a pattern of failure to train causing similar constitutional injuries.

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,"

*Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

## B.   Absolute Immunity

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).  The Second Circuit has made clear that "prosecutors enjoy 'absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Id.* at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)).  "For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial." *Id.* (citations omitted); *see also Imbler*, 424 U.S. at 431 (concluding that a prosecutor is absolutely immune from a Section 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case").  For that reason, the Second Circuit has held that "absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Anilao*, 27 F.4th at 864 (quotation omitted).

Therefore, "'absolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority." *Anilao*, 27 F.4th at 865 (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004)).

In most cases "the laws do authorize prosecution for the charged crimes," *Bernard*, 356 F.3d at 504, and if the charging decision or other act is within the prosecutor's jurisdiction as a judicial officer, then absolute immunity attaches to their actions "regardless of any allegations" that their "actions were undertaken with an improper state of mind or improper motive." *Shmueli*, 424 F.3d at 237. "Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that 'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description." *Anilao*, 27 F.4th at 865 (quotation omitted). Ultimately, "unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).

County Defendants argue that Defendants Gorman and Jackson have absolute immunity for those actions alleged in the complaint.

### 1. Defendant Gorman

Plaintiff argues that Defendant Gorman is not entitled to absolute immunity in two situations: (1) where she conducted "investigative acts" "after the charges were filed," but "prior to presenting the case to the grand jury," in which she "failed to follow accepted practices," Dkt. No. 33 at 8; and (2) because she proceeded without jurisdiction to present predatory sexual assault against a child to the grand jury for indictment after officers only filed charges for criminal sexual abuse in the first degree. *See* Dkt. No. 1 at ¶¶ 78-80.

Post-arraignment, pre-trial "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the

State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  In contrast, pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity.  *See Hill v. City of New York*, 45 F.3d 653, 658, 661 (2d Cir. 1995) ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts").  Additionally, "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33).  Investigative tasks beyond the scope of absolute immunity are those "normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273; *see also Kanciper v. Lato*, 989 F. Supp. 2d 216, 228-29 (E.D.N.Y. 2013) ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and 'they do not become prosecutorial functions merely because a prosecutor has chosen to participate'") (quoting *Day v. Morgenthau*, 909 F.2d 75, 77-78 (2d Cir. 1990)).

Here, the acts Plaintiff complains of occurred after Plaintiff's arrest and arraignment.  *See* Dkt. No. 1 at ¶¶ 60-75.  Additionally, Defendant Gorman's interviews of CW-1 and CW-2 were done in preparation for presentation of the case to a grand jury, and are clearly acts undertaken in preparation for the initiation of judicial proceedings.  Defendant Gorman is entitled to absolute immunity for such actions.  *See Buckley*, 509 U.S. at 272-73 (noting that the Supreme Court has specifically held that a prosecutor's "out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity because it was 'fairly within [the prosecutor's] function as an advocate'") (quoting *Imbler*, 424 U.S. at 430 n.32).

Plaintiff also argues that Defendant Gorman is not entitled to absolute immunity because she acted without jurisdiction.  *See* Dkt. No. 1 at ¶¶ 81, 109, 137.  Acting outside of prosecutorial authority deprives actions of prosecutorial immunity.  *See Anilao*, 27 F.4th at 865.  However, "[p]rosecutors [] have absolute immunity in a § 1983 action even if it turns out that 'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description."  *Id.* (quotation omitted). Prosecutors have been found to have absolute immunity because there was a statute under which prosecutors were entitled to prosecute.  *Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1987).

Plaintiff alleges that the charged crime of predatory sexual assault against a child "did not exist until June, 2006," and "[t]he indictment, therefore, was based on conduct that could not possibly satisfy the requirements of the criminal statute, and was jurisdictionally defective."  *See* Dkt. No. 1 at ¶¶ 80-81.  The indictment was based on alleged abuse occurring between 2003 and 2007.  *See id.* at ¶ 78.  Following the initial Broome County trial finding Plaintiff guilty, the Third Department discussed this issue when reversing on a different ground:

> Count 1 of the indictment alleges that defendant committed the crime of predatory sexual assault against a child as a result of her actions between 2003 and 2007, but the crime itself was only created on June 23, 2006 (*see* L 2006, ch 107, §§ 2, 10) … the victim testified that the abuse occurred throughout the period that she was living with defendant … the defect in the indictment appears to be a factual, nonjurisdictional one … Nevertheless, it is one that can and should be resolved before a second trial.

*Stone*, 133 A.D.3d at 985–86 (citations omitted).  The court specified that Defendant Gorman charged Plaintiff with a crime that existed not only at the time of indictment, but at the time when some of the alleged abuse took place.  As such, Defendant Gorman acted pursuant to a valid statute, charging activity that did include some that occurred after the statute was enacted, and did

not act in a complete absence of all jurisdiction.  Therefore, Defendant Gorman is entitled to absolute immunity for her presentation to the grand jury and actions in prosecuting Plaintiff, and the fair trial and malicious prosecution claims against Defendant Gorman are dismissed based on absolute immunity.

Plaintiff alleges Defendant Gorman failed to intervene to prevent Defendant Jackson from presenting false evidence at trial.  *See* Dkt. No. 1 at ¶ 161.  This, too, is like a conspiracy claim and protected by absolute immunity.  *See Anilao*, 27 F.4th at 864.  As such, the failure to intervene claim against Defendant Gorman is dismissed based on absolute immunity.

### 2. Defendant Jackson

"'[W]here a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy' and is left with only qualified immunity as a potential shield."  *See id.* (emphasis, quotation, and other citation omitted).  "A narrow limitation to the scope of absolute immunity in § 1983 actions thus exists where the defect is jurisdictional — that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates … to the prosecutor's motivation or the reasonableness of his official action."  *Id.*  "The jurisdictional defect must be clear and obvious."  *Id.*  "'In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, ... we inquire whether' any relevant criminal statute exists that 'may have authorized prosecution for the charged conduct.'"  *Id.* at 864-65 (quotation and other citation omitted).

Both Plaintiff and Defendant Jackson acknowledge the second prosecution was "jurisdictionally defective," *see* Dkt. No. 1 at ¶¶ 138-39; Dkt. No. 24-6 at 7, as Defendant Jackson never filed a new indictment nor re-presented the case to the grand jury reflecting the lesser

included offense as required by New York state law.  *See generally* CPL § 210.20; *Stone*, 169 A.D.3d at 1166; N.Y.C.P.L. §§ 210.05, 200.70.

The issue before the Court is whether the lack of a new indictment or a new presentation to a grand jury deprived Defendant Jackson of jurisdiction to prosecute, thus making him not entitled to absolute immunity.  The procedural requirements of presentation to a grand jury and an indictment are guaranteed by New York statute.  N.Y.C.P.L. §§ 210.20, 210.05, 200.70.  Failure to follow such statutory procedural requirements deprives a court of jurisdiction.  *See People v. Chadick*, 122 A.D.3d 1258, 1259 (4th Dep't 2014); *People v. Casey*, 66 A.D.3d 1128, 1129-30 (3d Dep't 2009).  As such, by failing to follow such requirements, Defendant Jackson acted without any colorable claim of authority and is not entitled to absolute immunity.

## C.    Malicious Prosecution

To state a claim for malicious prosecution, the plaintiff must plausibly allege, "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions."  *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

"A defendant could have initiated a prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.'"  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (quoting *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)); *see also Thomas v. City of Troy*, 293 F. Supp. 3d 282, 294 (N.D.N.Y. 2018), *on reconsideration sub nom. Thomas v. Mason*, No. 1:17-CV-626, 2019 WL 6111572 (N.D.N.Y. Nov. 18, 2019).  The Second Circuit has held that although "police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim

for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted); *Joyner v. Cnty. of Cayuga*, No. 5:20-CV-60, 2020 WL 1904088, *8 (N.D.N.Y. Apr. 17, 2020). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

City Defendants deny that they initiated or continued a criminal proceeding, that there was a lack of probable cause, and that Defendants acted with actual malice as a motivation. The complaint alleges that all three Defendant police officers failed to follow well-established public protocol, creating evidence that they knew was false. *See*, *e.g.*, Dkt. No. 1 at ¶¶ 32-48, 56, 159. Specifically, Defendant Demer is alleged to have never had training about investigating child sexual abuse claims prior to improperly interviewing CW-2. *Id.* at ¶¶ 47-50, 56-57, 178. Defendant Peters signed the felony complaints. *See* Dkt. No. 1 at ¶ 52. Defendant Woody filed the charges. *See id.* at ¶ 54. As such, Plaintiff has plausibly alleged that the Defendant investigators created and forwarded false information to prosecutors, thereby initiating or continuing a prosecution.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Adams v. City of New York*, 226 F. Supp. 3d 261, 269 (S.D.N.Y. 2016) (citing *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013)). "Probable cause, in the context of

malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* (citation omitted). "[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original) (quotation omitted). "Alternatively, the presumption 'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.'" *Hill v. Melvin*, No. 05 Civ. 6645, 2006 WL 1749520, *13 (S.D.N.Y. June 27, 2006) (quotation and other citation omitted). Additionally, "'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). In deciding a motion to dismiss, the court does not consider affirmative defenses that require the court to weigh evidence. *See Shabazz v. Kailer*, 201 F. Supp. 3d 386, 393 (S.D.N.Y. 2016) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature ... the existence ... of probable cause is to be decided by the jury") (citation omitted). The court may however, consider affirmative defenses that are clear from the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Plaintiff alleges that "Defendants commenced and continued the proceeding without probable cause," Dkt. No. 1 at ¶ 139, as Defendants Peters, Woody, and Demer knew evidence was not reliable, failed to observe typical guidelines for these types of investigations, and failed to conduct further investigation. *Id.* at ¶¶ 53-54, 56-57, 144, 146. Such allegations by Plaintiff may

amount to bad faith in prosecution.[3]  *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("[M]alice may be shown by proving the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff").  City Defendants[4] argue the victims' statements, the grand jury indictment, and Plaintiff's convictions provided probable cause.  *See* Dkt. No. 25-1 at ¶¶ 9-15.  Albeit a close call, the Court finds that Plaintiff has plausibly alleged a claim of malicious prosecution against City Defendants.

Additionally, City Defendants claim that the chain of causation for malicious prosecution was broken when the case was passed to the prosecuting attorney, or alternately, the grand jury, *see id.* at ¶ 18, and because the county court found sufficient evidence for the lesser included offense.  *See* Dkt. No. 25-4 at 12-13.  While some courts have used the phrase "chain of causation," often the discussion of breaking the chain of causation is a reiterated version of a discussion of whether there is malice or bad faith for the malicious prosecution claim, rather than an additional argument.  For example,

> when a plaintiff pursues a claim of malicious prosecution against police officers based on an "unlawful arrest," the "intervening exercise of independent judgment" by a prosecutor to pursue the case usually breaks the "chain of causation" unless the plaintiff can produce evidence that the prosecutor was "misled or pressured" by the police.

*Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) (citation omitted); *see also Hasan v. Onondaga County*, No. 5:18-CV-806, 2021 WL 5868121, *14 (N.D.N.Y. Dec. 10, 2021) ("When a plaintiff pursues a claim of malicious prosecution against police officers based on an unlawful

---

[3] Further, a lack of probable cause is evidence of malice, an element of malicious prosecution. *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) ("Malice may be inferred from lack of probable cause") (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).

[4] County Defendants did not raise any defenses specific to malicious prosecution.

arrest, the 'intervening exercise of independent judgment' by a prosecutor usually breaks the 'chain of causation' unless the plaintiff can show the prosecutor was 'misled or pressured' by an officer") (citation omitted); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009); *Buari v. City of New York*, 530 F. Supp. 3d 356, 385–86 (S.D.N.Y. 2021) (holding that the defendants "cannot avoid liability by pointing a finger at the [state court] that [they] allegedly deceived and misled.") (citation omitted); *Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51, 63 (E.D.N.Y. 2021) (utilizing "chain of causation" language in introducing the cause of action of malicious prosecution). Here, Plaintiff's allegations, including those of failing to investigate claims, wrongful influence of witnesses' statements, and knowing that such evidence created in coercive or wrongful situations was false, may raise an inference of bad faith. *See Newton v. City of New York*, 566 F. Supp. 2d 256, 276 (S.D.N.Y. 2008). Such accusations could rise to unduly suggestive identification procedures or coercing witnesses. Taking Plaintiff's allegations as true, it is plausible that the police acted in bad faith and thus the chain of causation is not broken by passing on such allegedly improper evidence to the prosecutor or grand jury. Therefore, City Defendants are not entitled to dismissal based on intervening causation. Additionally, having already discussed bad faith and malice, the Court finds Plaintiff sufficiently alleged her malicious prosecution claim.

Accordingly, City Defendants' motion to dismiss as to the malicious prosecution claim is denied.[5]

**D.   Right to Fair Trial[6]**

---

[5] To the extent that City Defendants argue that negligence or reckless disregard is not enough for a Section 1983 malicious prosecution, *see* Dkt. No. 25-4 at 6-7, this Court does not have to reach that question as Plaintiff alleges the Defendants "knew" such evidence was false.

[6]  Plaintiff argues that two categories of individuals violated her right to a fair trial: prosecutors and police officers. However, only City Defendants filed a motion to dismiss Plaintiff's fair trial

A "claim for the denial of the right to a fair trial can proceed under [Section] 1983 based on allegations that a police officer fabricated evidence, if that fabrication caused a deprivation of the plaintiff's liberty … " *Bailey v. City of New York*, 79 F. Supp. 3d 424, 446-47 (E.D.N.Y. 2015) (citing *Morse v. Spitzer*, No. 07-CV-4793, 2012 WL 3202963, *5-6 (E.D.N.Y. Aug. 3, 2012)).  An officer deprives, "[a] person … of her constitutional right to a fair trial when 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'"  *Folk v. City of New York*, 243 F. Supp. 3d 363, 374 (E.D.N.Y. 2017) (quoting *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012)).  The officer must have "knowingly falsif[ied] evidence." *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021) (citation omitted); *see also Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 475790, *16 (S.D.N.Y. Sept. 29, 2018) ("Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial . . . . Instead plaintiffs must identify the actual fabrication") (citations omitted); *Barnes v. City of New York*, No. 18-CV-7119, 2020 WL 6947424, *4 (S.D.N.Y. Nov. 25, 2020) ("While it is true that the information may have in fact been false, that does not necessarily mean that evidence was fabricated.  For fabrication, Plaintiff must show that the officers knew the statements were false and made them anyway") (citation omitted).  "[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must [therefore] prove by a preponderance of the evidence that the officer created false information, the officer forwarded the

claim.  As such, the Court will only address Plaintiff's fair trial claim as it relates to Defendants Peters, Demer, and Woody, all police officers with the Binghamton Police Department.  As noted above, however, the fair trial claim against Defendant Gorman is dismissed on absolute immunity

false information to prosecutors, and the false information was likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016).

Here, Plaintiff alleges that the City Defendants "create[ed] and forward[ed] to prosecutors evidence that they knew or should have known was false, including the statements signed by CW-1 and CW-2 on or about August 24, 2011, and the recorded interviews of CW-1 and CW-2 that failed to follow accepted practices in multiple ways." *See* Dkt. No. 1 at ¶ 146.  Plaintiff has alleged facts that the Defendant officers purposely created false evidence via improper interview techniques, or that they recklessly disregarded the fact that the evidence being forwarded was false.

Further, "'Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for [the] deprivation of liberty.'" *Smalls*, 10 F.4th at 132 (quoting *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016)).  Here, City Defendants argue that the courts found the evidence credible, *see* Dkt. No. 25-4 at 26.  However, even if there was probable cause or the information is believable, "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Ricciuti*, 124 F.3d at 130.  Regardless of whether the Court believed the evidence, an officer's knowing falsification of evidence is still actionable.  As such, the motion to dismiss the claim of fair trial deprivation against City Defendants is denied.

**E.      Official Capacity Claims Against Defendant Jackson[7]**

"When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.'" *D'Alessandro v. City of New York*, 713 Fed. Appx. 1, 8

grounds.

(2d Cir. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  "Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity."  *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). However, "if a suit centers 'on the administration of the district attorney's office'—that is, on the 'office policy' that the district attorney sets—then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize him from suit."  *Id.* (quoting *Ying Jing Gan*, 996 F.2d at 536).  "Eleventh Amendment immunity … deprives the federal courts of power to award money damages enforceable against a state's treasury."  *Beaulieu v. Vermont*, 807 F.3d 478, 485 (2d Cir. 2015).  "[T]he governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Courts have found that special county prosecutors appointed for criminal trials are state actors for purposes of Eleventh Amendment immunity.  *See Ying Jing Gan*, 996 F.2d at 536.  As a state actor, "if [a special prosecutor] was sued in his official capacity, a recovery of monetary damages would be precluded by the Eleventh Amendment of the United States Constitution."  *Aretakis v. Durivage*, No. 1:07-CV-1273, 2009 WL 249781, *16 n.20 (N.D.N.Y. Feb. 3, 2009) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)).  Plaintiff alleges the claims against Defendant Jackson in his official capacity are proper as he is a County policymaker, and so does not act as

---

[7] Plaintiff has withdrawn the official capacity claim against Defendant Gorman.  *See* Dkt. No. 33 at 27.

an arm of the state subject to Eleventh Amendment immunity. *See* Dkt. No. 33 at 27.[8] However,

as the Second Circuit has decided that special county prosecutors act as an arm of the state for

purposes of the Eleventh Amendment, and as he was a special prosecutor appointed by the court,

the suit against Defendant Jackson in his official capacity is dismissed based on Eleventh

Amendment immunity.[9]

**F.      Failure to Intervene**

"A[n] … officer may be liable for failure to intervene under Section 1983 where '(1) the

officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in

the officer's position would know that the victim's constitutional rights were being violated; and

(3) the officer does not take reasonable steps to intervene.'" *Gerasimou v. Cillis*, No. 15-CV-

6892, 2022 WL 118748, *5 (E.D.N.Y. Jan. 12, 2022) (quoting *Jean-Laurent v. Wilkinson*, 540 F.

Supp. 2d 501, 512 (S.D.N.Y. 2008), affirmed, 461 Fed. Appx. 18 (2d Cir. 2012)).  The statute of

limitations for a claim based on failure to intervene accrues when the failure to intervene occurs.

*Roundtree v. City of New York*, No. 15–CV–6582, 2018 WL 443751, *3 (S.D.N.Y. Jan. 16,

2018); *see also Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), on

reconsideration sub nom., *Thomas v. Mason*, No. 1:17-CV-626, 2019 WL 6111572 (N.D.N.Y.

Nov. 18, 2019).  "In malicious prosecution suits under Section 1983, the statute of limitations

begins to run when the prosecution 'terminate[s] in the plaintiff's favor.'" *Spak v. Phillips*, 857

F.3d 458, 462 (2d Cir. 2017) (quotation omitted).

---

[8] As discussed *infra* page 25, Defendant Jackson did not act as a County policymaker for purposes of *Monell* liability.

[9] As the official capacity claim against Defendant Jackson is dismissed based on Eleventh Amendment Immunity, the Court will not address Defendants' contention regarding redundancy of having both official capacity claims and claims against the County or municipality.  *See* Dkt. No 24-6 at 15.

City Defendants[10] claim that "[b]ecause the latest trial the City Defendant allegedly failed to prevent ended on February 9, 2017, and this action was not commenced until January 26, 2022, Plaintiff's failure to intervene claim is barred by the Statute of Limitations."[11]  Dkt. No. 25-4 at 27.  Plaintiff argues that the running of statute of limitations instead began when the Third Department reversed the conviction and dismissed the indictment in 2019.  *See* Dkt. No. 39 at 29. Defendants cite *Thomas v. City of Troy*.  In that case, as well as in *Roundtree v. City of New York,* the failure to intervene claims are based on a false arrest and use of excessive force, both of which were not ongoing constitutional violations, as is the case with malicious prosecution.  Failure to intervene claims based on malicious prosecution accrue when the malicious prosecution claims accrue, and malicious prosecution claims accrue when there is a decision not inconsistent with innocence.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019).  In this case, such a decision occurred in 2019.  *See People v. Stone*, 169 A.D.3d 1165 (3d Dep't 2019).  As such, the failure to intervene claim against City Defendants is timely, and the motion to dismiss as to the failure to intervene claim against City Defendants is denied.

**G.    *Monell* Liability**

It is well settled that "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior.*"  *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quotations omitted).  Rather, "[i]n order to hold the County liable under § 1983, plaintiff must put forth sufficient evidence to show that individual defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom, or practice."  *Thornton v. Cty. of*

---

[10] The failure to intervene claim against Defendant Gorman has been dismissed based on absolute immunity.

[11] Defendants also raise failure to state an underlying constitutional violation, *see* Dkt. No. 25-4 at 27, but having found there remain alleged violations, the Court will not address that claim further.

*Albany*, No. 9:14-CV-679, 2016 WL 5793714, *7 (N.D.N.Y. Oct. 4, 2016) (citing *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658, 690–91 (1970)). As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted).

> A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials.

*Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (quotation and other citation omitted).

### 1. Broome County – Defendant Jackson as Policymaker

Generally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[,]" *Ricciuti*, 941 F.2d at 123, unless "'there is an officially promulgated policy as that term is generally understood,' [or] 'where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken.'" *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, *16 (S.D.N.Y. Mar. 30, 2016) (quoting *Newton*, 566 F. Supp. 2d at 271). Similarly, "[a] pattern of similar constitutional violations by untrained

employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train[,]" because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotations and citation omitted).

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("'[T]he mere assertion ... that a municipality has such a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference'") (quotation omitted); *see also Zherka v. City of New York*, 459 Fed. Appx. 10, 12 (2d Cir. 2012).  "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).  The Second Circuit has "been consistent in holding that the actions of county prosecutors in New York are generally controlled by municipal policymakers for purposes of *Monell*, with a narrow exception emanating from *Baez* being the decision of whether, and on what charges, to prosecute." *Bellamy v. City of New York*, 914 F.3d 727, 759 (2d Cir. 2019); *see also Ying Jing Gan*, 996 F.2d at 536.  "[A] district attorney may be deemed to have acted as a county policymaker when he acts as the manager of the district attorney's office … but not for misconduct in prosecuting an individual." *McKeon v. Daley*, 101 F. Supp. 2d 79, 92 (N.D.N.Y. 2000) (citations omitted).

Plaintiff alleges that Defendant Jackson acted as a county policymaker in his role as a

special prosecutor appointed by court order.  *See* Dkt. No. 1 at ¶ 110; Dkt. 24-2; Dkt. No. 33 at

26.  Plaintiff argues that "[b]y reason of his appointment as Special Prosecutor to prosecute the

case against Samantha 'in place and stead of the Broome County District Attorney,' defendant

Jackson was a Broome County policymaker under State law, and his conduct is directly

attributable to the County for purposes of liability under 42 U.S.C. § 1983."  Dkt. No. 1 at ¶¶ 167-

170.  Here, Defendant Jackson was not granted policymaking authority for the county over what

types of cases to prosecute, how to indict, or how to utilize certain types of evidence.  Rather,

here Plaintiff complains of the Defendant Jackson's alleged misconduct just in prosecuting her

case.  *Cf. McKeon v. Daley*, 101 F. Supp. 2d 79, 92 (N.D.N.Y. 2000); *Ramos v. City of New York*,

285 A.D.2d 284, 303 (1st Dep't 2001); *Johnson v. Kings Cnty. Dist. Attorney's Off.*, 308 A.D.2d

278, 295 (2d Dep't 2003) ("the plaintiff's third and fourth causes of action challenge the District

Attorney's management of the office, not the decision to prosecute.  In *Walker v. City of New

York*, at 301, the United States Court of Appeals for the Second Circuit stated that 'where a district

attorney acts as the manager of the district attorney's office, the district attorney acts as a county

policymaker'"); *see also Ramos*, 285 A.D.2d at 303.  Here, in making decisions as a special

prosecutor, Defendant Jackson did not act in a supervisory capacity at the District Attorney's

Office.  Rather, Defendant Jackson decided on what charges to prosecute and what evidence to

present, similar to the decisions in *Baez* about whether and how to prosecute, rather than

managerial decisions subject to municipal policies.  As such, Defendant County of Broome is not

liable under this theory.

### 2. *Failure to Train*

Under Section 1983, a municipality's failure to train its employees in a relevant respect

must amount to "deliberate indifference to the rights of persons with whom the [untrained

employees] come into contact." *Connick*, 563 U.S. at 61 (citing *Canton v. Harris,* 489 U.S. 378, 388 (1989)).  A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.  *See id.* at 62 (citation omitted).  However, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."  *Id.* at 64 (discussing *Canton*'s "single-incident" liability).

### a. Defendant County

Plaintiff argues that Broome County's failure to train prosecutors in generally accepted practices for child sex-abuse investigations provides for *Monell* liability.  As to prosecutors, the Supreme Court explained that because of lawyers' ethical and continuing educational responsibilities, "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Connick*, 563 U.S. at 66 (citation omitted).  Further, the Court found that "[a] district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in "the usual and recurring situations with which [the prosecutors] must deal."[9] *Connick*, 563 U.S. at 67 (quoting *Canton,* 489 U.S. at 391).  Failure to train claims have been dismissed where the "Plaintiff's complaint does not sufficiently allege a pattern of similar constitutional violations by the District Attorney's Office." *Washington v. Broome Cnty. Dist. Attorney's Off.*, No. 3:20-CV-1099, 2020 WL 9455048, *4 (N.D.N.Y. Nov. 24, 2020), *report and recommendation adopted*, 2021 WL 1660480 (N.D.N.Y. Apr. 28, 2021).

Here, Plaintiff only complains specifically about the prosecutorial acts relevant to her case, and not as part of a larger group of instances of such constitutional violations.  Moreover,

although Plaintiff mentions the County's failure to train unnamed investigators, Plaintiff fails to

allege that inadequate training of these unnamed individuals led to recurring constitutional

violations.  Such conclusory allegations are insufficient to plausibly allege *Monell liability*.  As

such, the claim against the County of Broome for failing to train its prosecutors is dismissed.

### b. Defendant City

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where

the failure to train amounts to deliberate indifference to the rights of persons with whom the

police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

> [I]t may happen that in light of the duties assigned to specific
> officers or employees the need for more or different training is so
> obvious, and the inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the city can
> reasonably be said to have been deliberately indifferent to the need.
> In that event, the failure to provide proper training may fairly be
> said to represent a policy for which the city is responsible, and for
> which the city may be held liable if it actually causes injury.

*Id.* at 390.

Plaintiff alleges the City of Binghamton failed to train its police in accepted practices for

child sexual abuse cases.  In support, Plaintiff identifies that the City has its own Children's

Advocacy Center, *see* Dkt. No. 1 at ¶ 18, demonstrating its acute awareness of the special

attention or requirements of interviewing child survivors of abuse.  Additionally, Plaintiff argues

the City would know of the risk of failing to train officers because of publicly available and

accepted materials about how to investigate such cases.  *See id.*; Dkt. No. 34 at 15, 38.  Plaintiff

argues that "[t]he need for the foregoing training was obvious, particularly with regard to

Defendant Demer, who had no such training whatsoever prior to interviewing CW-2 on August

24, 2011."  Dkt. No. 1 at ¶ 178.  Plaintiff adds that "[b]y failing to implement an adequate training

program despite the obvious need for one, the City and its policymakers exhibited deliberate indifference to the rights of persons such as plaintiff Samantha Stone." *Id.* at ¶ 179.  Here, Plaintiff has sufficiently alleged facts of deliberate indifference such that a dismissal at this stage is unwarranted.  As such, Defendants' motion to dismiss as to City of Binghamton for failure to train its investigators is denied.

For the foregoing reasons Defendants' motions to dismiss are granted in part and denied in part.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that County Defendants' motion to dismiss (Dkt. No. 24) is **GRANTED in part and DENIED in part**;[12] and the Court further

**ORDERS** that Defendant Gorman is dismissed from this case; and the Court further

**ORDERS** that Defendant Broome County is dismissed from this case; and the Court further

**ORDERS** that City Defendants' motion to dismiss (Dkt. No. 25) **is DENIED**; and the Court further

---

[12] As a result of the MDO, the following claims remain as to County Defendants: personal capacity claims of malicious prosecution and right to a fair trial against Defendant Jackson.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: February 9, 2023
       Albany, New York

Mae A. D'Agostino
**U.S. District Judge**